**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

|                          |                                            |
|--------------------------|--------------------------------------------|
| **Plaintiff(s),**        | **CASE NUMBER:  02-80631**                 |
|                          | **HONORABLE VICTORIA A. ROBERTS**          |

**v.**

**VINCENT THOMPSON,**

**Defendant(s).**

_____/

**ORDER**

**I.      INTRODUCTION**

This matter is before the Court on Defendant's Motion Under 28 U.S.C. §2255 to

Vacate, Set Aside, or Correct Sentence.  Defendant's motion is **DENIED IN PART**.

**II.     BACKGROUND**

Defendant Vincent Thompson was indicted on four counts:  1) possession of

cocaine with intent to distribute, in violation of 21 U.S.C. §841(a)(1); 2) possession of

marijuana with intent to distribute, in violation of 21 U.S.C. §841(a)(1); 3) felon in

possession, in violation of 18 U.S.C. §§922(g), 924(e)(1); and 4) possession of  a

firearm in furtherance of a drug crime, in violation of 18 U.S.C. §924(c).  In March 2003,

a jury found him guilty on all charges.  In May 2005, the Court sentenced Defendant to

360 months each on Counts I through III to be served concurrently, and 60 months on

Count IV to be served consecutively to Counts I through III.

Defendant appealed his conviction and sentence in the Sixth Circuit Court of

Appeals.  On August 23, 2006, the Sixth Circuit affirmed.  The United States Supreme

Court denied Defendant's petition for a *writ of certiorari* on March 29, 2007.  Defendant

filed this §2255 motion on October 23, 2007.

In his motion, Defendant argues that his sentence should be set aside or vacated

on 11 grounds:  1) his prosecution was based on a defective search warrant; 2) the

government engaged in selective and vindictive prosecution; 3) there was a variance in

the indictment and verdict; 4) his sentence exceeded the statutory maximum allowed

under Count I; 5) there was an error in the jury instructions with respect to the specific

intent element of Counts I and II; 6) the complaint and indictment were procured by

fraud and deception; 7) the government failed to obtain proper authorization for transfer

of his case from the State of Michigan to federal authorities; 8) there was a jurisdictional

error in the Superceding Indictment with respect to the statutory penalty; 9) the Court

improperly delegated its authority under Article III of the United States Constitution by

permitting the probation department to designate a drug treatment program; 10)

mandatory imposition of career offender status is unconstitutional under *United States v*

*Booker*[1]; and 11) ineffective assistance of trial and appellate counsel.

## III.    APPLICABLE LAW AND ANALYSIS

Under 28 U.S.C. §2255(a), a prisoner may move to vacate, set aside or correct a

sentence on the grounds that it "was imposed in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack."  However, claims which were not raised at trial or on direct

appeal are barred by procedural default unless the defendant demonstrates:  1) cause

---

[1]543 U.S. 220 (2005)

which excuses his failure to raise the issues and actual prejudice, or 2) actual innocence. *United States v Frady*, 456 U.S. 152, 167 (1982); *Napier v United States*, 159 F.3d 956, 959 (6th Cir. 1998); *Bousley v United States*, 523 U.S. 614, 623 (1998). The cause and prejudice standard, however, does not apply to claims of ineffective assistance of counsel. *Massaro v United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim "may be brought in a collateral proceeding under §2255, whether or not the petitioner could have raised the claim on direct appeal." *Id*.

### A. Defendant's First Ten Claims are Procedurally Defaulted

Defendant only raised 1 of his first 10 claims before trial--validity of the search warrant--but failed to raise any of his claims on direct appeal. Yet, Defendant contends his claims are not procedurally defaulted because the cause of his failure to raise them was the ineffective assistance of his trial and appellate attorneys. Presumably as an alternate basis for finding cause, Defendant asserts that he suffers from attention deficit disorder ("ADD"), only has an eighth grade education, can barely read, and is "borderline retarded." Def. Reply at p. 3.

First, there is no evidence to support Defendant's claim of mental/educational deficiencies. During an interview with Probation Officer Kristen Berry for the Presentence Investigation Report ("PSIR"), Defendant told Ms. Berry he was diagnosed as "emotionally impaired" when he was younger and that he attended special education schools. PSIR at ¶¶104, 109-110. However, Ms. Berry was unable to verify Defendant's assertions and he does not present evidence to substantiate either claim or that he "could barely read" and is "borderline retarded." PSIR at ¶¶104, 109-110. Therefore, Defendant failed to establish that mental/educational deficiencies were the cause of his

failure to raise his claims at trial or on appeal.

Second, Defendant failed to establish that his attorneys' failure to raise these claims constituted ineffective assistance of counsel. In order to sustain an ineffective assistance of counsel claim, Defendant must prove that his attorneys' performance was deficient and that he was prejudiced by the deficiency. *Mason v Mitchell,* 320 F.3d 604, 616 (6th Cir 2003)(*citing Strickland v Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Id.* However, "[t]he objective standard of reasonableness is a highly deferential one and includes 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id* at 616-617 (*quoting Strickland*, 466 U.S. at 689). To prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

As explained more fully below, claims 1 through 10 are without merit and, therefore, Defendant has not shown that either of his attorneys' failure to raise them constituted ineffective assistance.

### i. Search Warrant

On June 30, 2002, officers secured a search warrant for a home where a confidential informant participated in a controlled buy of cocaine one day earlier. Defendant was arrested there the next day during the execution of the warrant. Cocaine, marijuana, and a firearm were recovered. Prior to trial, Defendant filed a motion to suppress this evidence. Defendant argued, among other things, that there

was no probable cause for the search warrant because the information the affiant relied upon was stale.  The Court denied Defendant's motion.  *See* Order Denying Motion to Suppress, or in the Alternative, for an Evidentiary Hearing, Jan. 9, 2003.  Citing Sixth Circuit precedent, the Court found that the affidavit provided ample evidence to establish probable cause and that the information provided by the affiant was not stale. Defendant did not raise the claim in his appeal to the Sixth Circuit.

Presumably, Defendant contends his appellate counsel was ineffective for failing to raise the claim on appeal.  But, Defendant relies upon the same substantive arguments this Court previously considered and found to be without merit.  (It is noted that Defendant adds the assertion that the affidavit is unreliable because the wrong address is listed for the controlled buy, but he fails to provide evidence to support the claim.)  He does not cite any evidence or authority which even arguably dictates a different finding.  Inasmuch as "[c]ounsel may not be deemed ineffective for failing to raise meritless claims on appeal[,]" there is no basis to find that appellate counsel was ineffective for failing to reassert this claim on appeal.  *United States v Eady*, 2005 W.L. 3107729, *10 (W.D. Mich. 2005)(*citing Burton v Renico*, 391 F.3d 764, 781-782 (6th Cir. 2004)).

### ii.    Selective and Vindictive Prosecution

Defendant was arrested by the Detroit Police Department.  But, his case was referred for federal, rather than state, prosecution as part of the Project Safe Neighborhood ("PSN") crime reduction initiative.  The PSN is "a national initiative spearheaded by the Justice Department and administered locally by the United States Attorney for the Eastern District of Michigan[,]" under which Wayne and other county

prosecutor offices refer certain cases involving firearms for federal prosecution. *U.S. v Nixon*, 315 F.Supp. 2d 876, 877 (E.D. Mich. 2004). Federal prosecution often results in a significantly higher sentencing range than a defendant faced in state court.

Defendant says he was subjected to selective prosecution because African Americans in counties with large African American populations are disproportionately selected for prosecution under PSN, which he contends is a violation of the Equal Protection Clause. There is a heavy burden of proof for claims of selective prosecution:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire v Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

Defendant says he is unable without cooperation from the United States Attorney's office to present evidence in support of his claim. Therefore, he requests discovery. However, discovery under FRCrP 16 is not available as a matter of right for claims of selective prosecution, "[b]ecause a selective prosecution claim is not a defense to the merits of a criminal charge but, instead, an independent assertion of misconduct." *United States v Jones*, 159 F.3d 969, 975 n.3 (1998). A defendant must make a showing he is entitled to discovery by presenting some evidence of discriminatory effect and discriminatory intent. *United States v Bass*, 536 U.S. 862, 863 (2002). And, to meet the discriminatory effect prong, "the defendant must make a credible showing that similarly situated individuals of a different race were not prosecuted." *Id* at 863.

Defendant essentially admits he has no evidence to support his claim and he

offers no evidence to establish entitlement to discovery. Defendant only attaches lists of other defendants, including Caucasians, Native Americans, and Hispanics, whose firearm cases originated in local state courts and who were also indicted by the federal government as felons in possession. Def. Reply, Exh. A. Defendant's submission undermines, rather than bolsters, his claim of discriminatory effect or intent. And, Defendant has not established that the requisite evidence was available to his trial or appellate attorneys.

There is also no merit to Defendant's claim of prosecutorial vindictiveness. "[D]ue process prohibits an individual from being punished for exercising a protected statutory or constitutional right." *United States v Poole*, 407 F.3d 767, 774 (6th Cir. 2005). "Thus, a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited." *Bragan v Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001).

One way to prove prosecutorial vindictiveness, and the apparent means Defendant relies upon, is for a defendant to "demonstrate 'actual vindictiveness,' *i.e.,* he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Id* at 481 (citations omitted). Defendant contends the Government's "actual vindictiveness" is apparent because it filed a Superceding Indictment with "additional aggravating charges" to enhance his penalty to life or 30 years, despite the fact that the information on which the new charges were based was known to the Government when it initially accepted the case from the State of Michigan. There is, however, no factual basis for Defendant's assertion.

The charge which subjected Defendant to a maximum life sentence, possession

of cocaine with intent to distribute in violation of 21 U.S.C. §841(a)(1), was brought in the initial <u>and</u> Superseding Indictment.  *See* Indictment, Aug. 8, 2002; Superseding Indictment, Mar. 19, 2003.  And, Defendant's Guideline range was calculated to be 360 months to life because he qualified as a career offender under U.S.S.G. §4B1.1 due to his extensive criminal history.  *See* PSIR at ¶84.

Defendant failed to establish a prosecutorial vindictiveness claim.

### iii.    Variance in the Superceding Indictment and Verdict

Defendant was indicted in Count I for possession with intent to distribute cocaine base, also known as "crack."  The verdict form, however, only stated that jurors were to decide whether Defendant was guilty of possession with intent to distribute cocaine. Because the terms "cocaine base" or "crack" were omitted from the verdict form, Defendant contends the jurors' guilty verdict on Count I was actually for a lesser charge of possession of powder, rather than crack, cocaine.  There is no merit to this claim.

Defendant implies that jurors either knowingly or unwittingly proceeded under the impression that the charge in Count I was for possession with intent to distribute powder, rather than crack, cocaine.  There is no basis, however, for such a finding. Jurors were advised throughout the trial and during jury instructions that the substance at issue in Count I was crack cocaine.  Specifically:  1) the Court read the Superceding Indictment at the start of trial; 2) the Government read a stipulation into the record that the substance recovered from Defendant was crack cocaine; and 3) during the Court's reading of jury instructions, the Court again read the Superceding Indictment, referred to cocaine base when it delineated the elements the Government was required to prove (specifically advising that jurors had to find that Defendant knew he possessed cocaine

base), and again advised jurors that the parties stipulated that the substance at issue was crack cocaine.  Tr. Vol. 1 at 6, 111-112; Tr. Vol. 2. at 95-96.

Under the circumstances, there is no basis to find that the typographical error in the verdict form confused jurors regarding the substance at issue or that they effectively convicted Defendant on a lesser charge.

### iv.    Sentence Exceeded the Statutory Maximum

Relying upon the false premise that he was convicted on a lesser offense in Count I than was charged, Defendant argues that his sentence must be vacated because it exceeded the statutory maximum for possession with intent to distribute powder cocaine.  He further argues that his sentence was "disproportionately unlawful" because it was based on the total weight of cocaine recovered without an adjustment for the various additives in it, *i.e.,* sugars and cutting agents.  And, he asserts that he was eligible for downward departure or variance based on his learning disability, dysfunctional family, psychological traumas as a child, alcoholism, drug use, and "fatherly abuses."  There is no support for these claims.

For the reasons stated, Defendant was not convicted on a lesser offense and, therefore, he was sentenced under the appropriate statute for Count I.

Second, the Court was not required to reduce the weight attributed to Defendant by any additives found in the cocaine recovered.  Defendant was sentenced under 21 U.S.C. §841(b)(1)(B)(iii) for possession with intent to distribute "5 grams or more of a *mixture or substance* . . . which contains cocaine base."  (emphasis added).  The drug quantity table in U.S.S.G. §2D1.1 sets the base offense level for convictions under §841 based on the weight of the drugs and states that "the weight of a controlled substance

set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  U.S.S.G. §2D1.1, Note A.  A court is only required to omit from its calculation of the weight the additives which "must be separated from the controlled substance before the controlled substance can be used."  U.S.S.G. §2D1.1, App. Note 1.  Defendant did not at sentencing or now offer evidence that the crack cocaine seized was not in usable form.  Therefore, the Court was not required to reduce the drug quantity by the amount of additives used to convert the drugs into crack cocaine.  *See United States v Watz*, 162 F.3d 1162, *3 (6th Cir. 1998)(rejecting argument that court required to reduce quantity by amount of additives used to "cut" cocaine)(unpub. op.).

### v.    Error in Jury Instructions

Defendant says the Court's instruction to the jury on Count I (possession with intent to distribute cocaine, 21 U.S.C. §841(a)(1)) "vitiated" the specific intent element, and that the Court acquiesced in the Government's failure to prove each element of the charge beyond a reasonable doubt.  He asserts that "[s]pecific intent should be specified with greater particularity than general intent."  Def. br. at p. 7.

To the extent Defendant contends an instruction defining "specific intent" was required or that the Court's instruction was insufficient to advise jurors of the requisite intent, there is no merit to either claim.  "[N]o instruction on the term "specific intent" is necessary to properly inform a jury of the requisite intent for a criminal conviction" under 21 U.S.C. §841(a)(1).  *United States v Kenan*, 1986 W.L. 17710, *2 (6th Cir. 1986)(unpub. op.)(*citing United States v S & Vee Cartage Co, Inc.,* 704 F.2d 914, 919 (6th Cir. 1983)).  It is sufficient if the Court conveyed that jurors were required to find that

Defendant knowingly possessed drugs and intentionally distributed them, which it did.

*See United States v Gibbs*, 182 F.3d 408, 433 (6th Cir. 1999). The Court stated:

> In order to sustain its burden of proof for the crime of Possession of a Controlled Substance with intent to distribute [cocaine base] as charged in Count One of the Indictment, the Government must prove the following three essential elements beyond a reasonable doubt:
>
> One, that Defendant Vincent Thompson possessed more than five grams of the controlled substance described in the Indictment. Two, the Defendant knew that this substance was cocaine base and three, the Defendant intended to distribute this controlled substance.

Tr., Vol. 2 at pp. 96-97. The Court did not err in its instruction to the jury on the intent element of Count I.

### vi.     Complaint and Superceding Indictment Procured by Fraud and Deception

Defendant asserts that the Superceding Indictment and Complaint were procured by fraud and deception because the Government falsely alleged to the Grand Jury and in the Superceding Indictment that the firearm at issue traveled in the interstate, when (according to Defendant) it was lawfully transported intrastate and sold by a subsidiary company in Michigan. Defendant's counsel, however, entered a Stipulation and Agreement that the gun "was not manufactured in the [S]tate of Michigan after 1898 and therefore traveled in and affected interstate commerce." Gov. Exh. 3. Defendant acknowledges the Stipulation and Agreement but says "it was entered on an improper conclusion and analysis of the law--based on deception to the court." Def. br. at pp. 8-9. Defendant, however, failed to present any evidence that counsel misinterpreted the law or that the weapon, in fact, did not travel in the interstate.

### vii.     Procedural Improprieties in Project Safe Neighborhood Program

Defendant argues that the Government failed to get authorization from "the executive branch of the Michigan government" to transfer his state case to federal authorities under PSN.  Defendant, however, cites no authority which establishes that the Government was required to get authorization from any other branch of government.

### viii.    Jurisdictional error in Superceding Indictment

Defendant contends there is a jurisdictional defect in his Superceding Indictment because the Government brought Count I against him under 21 U.S.C. §841(a)(1), instead of the provision which governs penalties for 11 grams of cocaine, 21 U.S.C. §841(b)(1)(B)(iii).  Defendant is incorrect.  Section 841(b) only pertains to the penalties which apply if a defendant is convicted under §841(a).  The Government cited the proper substantive statute in the Superceding Indictment.

### ix.    Court Improperly Delegated its Authority under Article III

In connection with Defendant's sentence to post-incarceration supervised release, the Court imposed mandatory drug testing upon Defendant and required that he participate in a substance abuse program approved by the probation department while on supervised release.  Defendant contends that allowing the probation department to select the substance abuse program is an improper delegation of the Court's authority under Article III of the Constitution.  Defendant also argues that the imposition of mandatory drug treatment violates *Booker's* holding that the Sentencing Guidelines are only advisory.  There is no merit to either claim.

The Guideline, U.S.S.G. §5D1.3(b), and statutory provision pertaining to supervised release, 18 U.S.C. §3583(d), mandate drug testing upon a defendant's release from incarceration.  But, neither mandate that a defendant participate in a drug

treatment program while incarcerated.  The Court's order that Defendant participate in such a program was an exercise of its discretion under §3583(d) and §5D1.3(b), to impose any condition which is reasonably related to its obligation under 18 U.S.C. §3553(a)(2)(D) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  Therefore, to the extent *Booker* even applies to the supervised release provisions of the Guidelines, the Court's Order is not in conflict with it.  With respect to Defendant's contention that allowing the probation department to select an appropriate drug treatment program is an improper delegation of the Court's authority, Defendant cites no authority to support his claims.

### x.    Improper Application of Sentencing Guidelines

Under U.S.S.G. §4B1.1(a), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  The probation department found that Defendant met each of the §4B1.1(a) criteria and recommended that he be sentenced as a career offender.  The Court agreed that the career offender provisions applied and sentenced Defendant within the Guideline range §4B1.1 dictated.

Defendant objected to the career offender designation at sentencing and on direct appeal, but on different grounds than he asserts now.  Defendant says now that the Court only designated and sentenced him as a career offender because the Court

believed it was obligated to do so under the Guidelines. In essence, he contends the Court, in violation of *Booker*, failed to recognize its discretion not to apply §4B1.1. Defendant also asserts that his sentence must be vacated or set aside because the Government did not list the prior convictions the Court relied upon in the initial or Superceding Indictment.

A district court must begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Gall v United States*, 128 S.Ct. 586, 596 (2007). Under the Guidelines, defendants who meet §4B1.1(a) criteria are deemed career offenders and their Guideline range must be calculated accordingly. *United States v LaBonte*, 520 U.S. 751, 753 (1997)("[E]ach defendant who qualifies for career offender status is automatically placed in criminal history "Category VI," the highest available under the Guidelines. The table then assigns the appropriate offense level based on the so-called "offense statutory maximum."). But, post-*Booker*, courts are no longer obligated to impose a sentence within the applicable Guideline range. *United States v LaLonde*, 509 F.3d 750, 763 (6th Cir. 2007). *Booker* rendered the Guidelines advisory, requiring only that courts consider the applicable Guideline range and the statutory concerns set forth at 18 U.S.C. §3553(a) and impose a sentence that takes into account the purposes set forth therein. *Booker,* 543 U.S. at 245.

At sentencing, the Court explicitly indicated its awareness of its discretion to sentence Defendant below the Guideline range dictated by his career offender status. Sent. Tr. at p. 17. However, the Court stated its belief that a sentence within the Guideline range better satisfied the objectives of §3553(a). *Id* at pp. 17-19. There was no *Booker* violation.

Defendant's second claim of error--that the Government failed to list his predicate prior convictions in the initial or Superceding Indictment--also fails. It is settled that the Government is not required to give notice of its intent to rely on prior convictions for a sentence enhancement under §4B1.1. *See United States v Mans*, 999 F.2d 966, 969 (6th Cir. 1993); *United States v Jackson*, 63 Fed. Appx. 839, 842 (6th 2003)(unpub. op.).

For the reasons stated, the first 10 of Defendant's claims are procedurally defaulted because he failed to establish either cause and prejudice or ineffective assistance of counsel. Defendant's motion to vacate, set aside, or correct his sentence on these grounds is denied.

## B.    Defendant's Remaining Claims of Ineffective Assistance

Defendant's eleventh claim of ineffective assistance of trial and appellate counsel is properly before the Court. But, only one of the grounds asserted merits either additional briefing or an evidentiary hearing.

### i.    Trial Counsel

Defendant contends that trial counsel, Craig Tank, failed to: 1) reveal a conflict of interest; 2) cross examine certain Government witnesses as necessary; 3) present evidence in support of the defense theory; 4) conduct pretrial investigation or interview witnesses; 5) negotiate a plea or convey a plea offer; 6) properly advise Defendant regarding stipulations; 7) advise Defendant to remain silent in the PSIR interview regarding his prior convictions; 8) object to certain expert testimony; 9) preserve the *Booker* issue regarding his career offender status; 10) file a motion *in limine* to prevent admission of his prior convictions; 11) argue that the "government should be limited to proving one of his felonies in PSIR to support an enhanced sentence;" 12) argue the

unconstitutionality of 18 U.S.C. §3559(c)'s burden shifting provision; 13) object to the Court's alleged statement to the jury that they were required to accept the stipulations as proof of elements the Government was required to prove; and 14) object to the Government notice, pursuant to 21 U.S.C. §851, that it intended to seek a sentence enhancement.

### a.      Claims Regarding Execution of Trial

Arguments 1 - 4, 6, 8, 10 and 13 pertain to the evidence Mr. Tank presented (or failed to present) on Defendant's behalf and an alleged conflict of interest.  Defendant first asserts Mr. Tank had a conflict of interest which compromised his representation.  This claim appears to be based on Defendant's perception that Mr. Tank had no allegiance to him, which he says is evidenced in a telephone conversation he had with Mr. Tank post-trial which was recorded and transcribed.  Defendant contends the conversation shows "that counsel had [sic] intended to sell out defendant from start; that he deliberately did not call defendant's witness' [sic] because they were friends and family members; that counsel deliberately refused to convey to defendant a plea offer and, condign [sic] prison based on the character and history of defendant which counsel dehumanized."  Def. br. at p. 12.

Attorneys have a duty of loyalty to clients and a duty to avoid conflicts of interest. *Strickland*, 466 U.S. at 688.  The second prong of the *Strickland* test for ineffective assistance of counsel--prejudice--is presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id* at 692 (*quoting Cuyler v Sullivan*, 446 U.S. 335, 350 (1980)).  Defendant failed to make this showing.  The Court finds that Mr.

Mr. Tank did not make any comments during the transcribed conversation with Defendant which suggest an improper conflict of interest or, as Defendant implies, sabotage. Defendant offers no other evidence which would support such a finding.

Defendant next asserts that Mr. Tank failed in many respects in the execution of the trial. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id* (internal quotation marks and citation omitted). Courts must also judge the reasonableness of counsel's actions in the context of the particular case. *Id* at 690. The *Strickland* Court summed up a defendant's burden:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. "[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Campbell v Coyle,* 260 F.3d 531, 551 (6th Cir. 2001).

Defendant says Mr. Tank failed to: cross examine Government witnesses about where the gun was found; introduce evidence in support of the defense theory; conduct

pretrial investigation or interview witnesses; object to certain expert testimony; file a motion *in limine* to prevent admission of his prior convictions; and, that he cajoled Defendant to accept stipulations based on conjecture and erroneous legal conclusions. Defendant's claims either lack a factual basis or he failed to establish that Mr. Tank's decisions were outside the bounds of reasonable trial strategy.

First, there is no factual basis for Defendant's claim that Mr. Tank did not cross examine Government witnesses about the location of the gun. Mr. Tank rather extensively cross-examined Officer Ronald Brown, who found the weapon during his search of a bedroom. Tr. Vol. 2 at pp. 13, 26-30.

Next, Defendant contends Mr. Tank failed introduce evidence in support of the defense theory. But, Defendant does not identify the evidence or witnesses he contends should have been presented in his defense. Defendant, likewise, does not present evidence Mr. Tank failed to conduct pretrial investigations or interviews or specify what he believes Mr. Tank should have discovered and presented on his behalf.

For Defendant's fourth claim of trial error, he seems to argue that Mr. Tank should have objected, pursuant to FRE 702, to Sergeant Fred Watkins' opinion testimony that the amount of drugs, its packaging, and other items recovered during the search indicated that the drugs were for distribution rather than personal use. Tr. Vol. 2 at pp. 60-62, 71-72. Defendant apparently contends Sergeant Watkins was permitted to testify as an expert without being certified.

There would have been no basis for the objection Defendant proposes. "Under Federal Rule of Evidence 702, a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it

"will assist the trier of fact to understand the evidence or to determine a fact in issue."
*United States v Johnson,* 488 F.3d 690, 698 (6th Cir. 2007). In *Johnson*, the Court held
that an officer who worked on narcotics investigations nearly his entire fourteen-year
career, routinely made undercover drug purchases, set up surveillance and observed
individuals trafficking in narcotics interacting in the field "was qualified [under FRE 702]
by his experience to interpret the street conduct he observed" for jurors. *Id.* The Court
noted that the illegal drug trade is among the "innumerable trades and practices that
employ . . . unique devices, feints, and codes that may mean nothing to the untrained
observer but may speak volumes to a maven qualified by experience or training," and
found that the officer's testimony helped jurors understand the evidence. *Id.* Like the
officer in *Johnson*, Sergeant Watkins testified that he worked in the narcotics division
for 18 to 19 years, executed search warrants for over 10,000 narcotic related raids,
arrested thousands for drug dealing, and made undercover drug purchases. Tr. Vol. 2
at pp. 55, 60-61. In light of his experience and the relevance of his testimony to the
question of whether the narcotics recovered were for personal use or sale, an objection
to Sergeant Watkins' opinion testimony would have been futile.

Defendant's fifth trial-based claim seems to be that Mr. Tank should have filed a
motion *in limine* to prevent the Government from admitting into evidence the three prior
felony convictions the Government relied upon to enhance his sentence. In fact,
Defendant's prior convictions were not admitted in the presence of jurors. Defendant's
stipulation that Defendant had three prior felonies which qualified as predicate offenses
for purposes of a sentence enhancement under 18 U.S.C. §924(e) was read into the
record outside the presence of the jury. Tr. Vol. 1 at p. 206.

Claiming that he is "borderline retarded" and has a "learning disability," Defendant next asserts he was inappropriately influenced to enter stipulations "based on wrong legal conclusions without any pretrial investigations conducted, based on conjectures and wrong legal concluded standards without researching the law." Def. br. at p. 13. He also asserts, in an apparent reference to the felon in possession charge in Count III, that there were "[i]mproper stipulations as a felon in possession without a pretrial investigation" even though an expert testified Defendant's fingerprints were not on the gun found, and (he erroneously says) there was no testimony as to where in the house the gun was found. *Id.* There is no evidence to support either claim. As stated, the probation department could not verify Defendant's claim of a learning or mental disability and he does not now present any such evidence. And, the only stipulation entered which pertained to the gun was that it was not manufactured in Michigan and traveled in and effected interstate commerce. Tr. Vol. 1 at p. 111. By so stipulating, Defendant agreed that there was no dispute on one of the three elements of the felon in possession claim--that the firearm previously traveled in interstate or foreign commerce. There is no basis to find that it was unreasonable for Mr. Tank to recommend the stipulation inasmuch as Defendant does not present evidence to the contrary. And, the stipulation did not, as Defendant suggests, relieve the Government of its burden of proof on the second element--that he knowingly possessed the firearm, the only element to which the location of the gun and absence of fingerprints was relevant. Defendant does not offer specific argument or authority to substantiate his claim that other stipulations were entered in error.

Defendant lastly says Mr. Tank failed to object "to the [C]ourt's [entry of a]

directed verdict or partial verdict by stating that the jury must accept the stipulations entered by the parties as proof of an element(s) [sic]." Def. br. at p. 14. Defendant's apparent argument is that the Court relieved the Government of its burden of proof on certain elements by directing jurors to accept stipulated facts as having been proven beyond a reasonable doubt.

Defendant is correct that, "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Estelle v McGuire*, 502 U.S. 62, 69 (1991). But, there is no factual basis for Defendant's claim that the Court violated this tenet. The Court did not advise jurors they were required to accept stipulated facts as proven. To the contrary, the Court advised jurors that they were solely responsible for deciding what the facts were based on the evidence presented, and that the Government was required to prove each element of each charge beyond a reasonable doubt. Tr. Vol 2 at pp. 87, 95-96, 100, 102.

Defendant failed to establish that Mr. Tank's representation throughout the trial fell below an objective standard of reasonableness.

### b. Claims Pertaining to Sentencing

Arguments 7, 9, 11,12 and 14 pertain to Defendant's sentencing. All are without merit.

Defendant argues that Mr. Tank failed to advise him to remain silent about his prior convictions during his post-conviction interview with the probation department. Presumably referring to the career offender enhancement under §4B1.1, Defendant contends that his cooperation with the probation department led to his enhanced

sentence. There is no basis for this claim. Defendant's prior convictions are a matter of public record which would have been discovered whether he revealed them or not.

Defendant next asserts (in his Reply) that Mr. Tank failed to object to the Government's notice pursuant to 21 U.S.C. §851 that it intended to seek an enhanced sentence under 21 U.S.C. §841(b)(1)(A), and he failed to advised Defendant of the notice or statutory ramifications of his prior convictions. Under §841(b)(1), a defendant convicted under a provision of §841(a) may face an enhanced sentence if he has a prior conviction for a felony drug offense. The Government, however, may not request an §841(b)(1) enhancement unless it files an Information, pursuant to 21 U.S.C. §851(a)(1), listing the prior convictions it relies upon "before trial, or before entry of a plea of guilty." Here, the Government filed an Information four days prior to trial indicating that it would rely upon Defendant's prior state court conviction for delivery/manufacture of less than 50 grams of a controlled substance to seek an enhancement under 21 U.S.C. §841(b)(1)(A). *See* Information, March 21, 2003.

There was no apparent basis for Defendant's attorney to object to the Government's §851 filing. The only error in the Information was that it indicated the Government intended to seek an enhancement pursuant to §841(b)(1)(A), rather than §841(b)(1)(B). Subsection §841(b)(1)(A) applies to convictions of larger quantities of drugs than is applicable to Defendant. Subsection §841(b)(1)(B)(i) applies to the amount (11.34 grams of cocaine base) attributable to Defendant. However, the Sixth Circuit has held that such clerical errors do not invalidate an Information which otherwise gives a defendant reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism. *See United States v*

*King*, 127 F.3d 483, 489 (6th Cir. 1997); *United States v Grooms*, 194 Fed. Appx. 355, 365 (6th Cir. 2006), *cert. den.*, 127 S.Ct. 2278 (2007)(government cited wrong subsection in Information and failed to amend prior to sentencing)(unpub. op.).

Inasmuch as the Information was timely filed, accurately described Defendant's prior felony drug conviction, and advised that the Government intended to rely upon the prior conviction to request an increased sentence, Defendant had reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence. Therefore, Mr. Tank's failure to object to the §851 filing was not objectively unreasonable. Defendant's complaint that Mr. Tank did not advise him of the filing or the statutory implications of his prior convictions seems to relate to Defendant's claim that Mr. Tank failed to adequately advise him about or represent him in plea negotiations, discussed more fully below.

Defendant's last three sentencing related claims are asserted against Mr. Tank. But, Mr. Tank withdrew as counsel 19 months before sentencing. So, it is presumed that Defendant intended to assert the remaining arguments against the attorney who represented him at sentencing, Robert Kalec. Defendant says his attorney should have preserved his claim that the Court's sentence violated *Booker* because it acted under the mistaken impression that it did not have discretion about whether or not to sentence him as a career offender under §4B1.1. This claim fails for the reasons stated *supra*-- the Court explicitly indicated that it was aware it had discretion to sentence Defendant outside the Guidelines, but found that a sentence within the Guidelines was more appropriate.

Defendant's next claim of error is that his attorney erred in failing to argue that

the Government should have been "limited to proving only one of the felonies that is alleged in the PSI[R] to support an enhanced sentence or penalty." Def. br. at p. 14. Defendant does not cite authority in support of this assertion and the Court is unable to discern the argument he makes. A defendant's sentence can only be enhanced under the career offender provisions of §4B1.1 if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. So, it was necessary for the Government to establish at least two prior felonies, and there would have been no apparent basis for Defendant's attorney to argue that the Government was prohibited from making the requisite showing.

Lastly, Defendant says his attorney should have argued the unconstitutionality of 18 U.S.C. §3559(c); specifically, that it inappropriately shifted the burden to him to prove that his prior convictions should not be counted for enhancement purposes. Def. br. at p. 14. Section §3559(c)(1) is the so-called "three strikes" statute under which a defendant receives a mandatory life sentence if he is convicted of a serious violent felony (as defined in the statute) and has prior convictions for either two serious violent felonies or one serious felony and one serious drug offense. Certain robbery or arson convictions may be excluded as a qualifying offense if the defendant presents clear and convincing evidence of the criteria set forth in subsection (c)(3). Presumably, this is the burden-shifting provision Defendant contends is unconstitutional. However, it appears Defendant was not sentenced under §3559(c), inasmuch as his Guideline range was determined to be 360 months to life, rather than mandatory life. Also, in any event, the Sixth Circuit characterized the disqualification provision in §3559(c)(3) as an affirmative defense and held that "the legislative branch has the constitutional power to allocate the

burden of proving an affirmative defense to a defendant." *United States v Gatewood*, 230 F.3d 186, 189 (6th Cir. 2000).

Defendant failed to establish that Mr. Tank or Mr. Kalec's representation on sentencing issues fell below a standard of objective reasonableness.

### c.    Plea Negotiations

Defendant's final claim against Mr. Tank is that he either failed to seek or negotiate a plea agreement on his behalf, or failed to convey a plea offer to Defendant. There is evidence which supports the latter claim.  Without indicating how he came into possession of it, Defendant attaches to his Reply a Rule 11 Plea Agreement purportedly signed by Assistant United States Attorney ("AUSA") and Chief of the General Crimes Unit Sheldon Light on February 20, 2003, and AUSA Shawn Jacque on February 25, 2003.  Def. Reply, Exh. B.  Mr. Jacque represented the Government at trial.  Mr. Tank was appointed as Defendant's attorney, replacing Stephen Rabaut, on February 10, 2003.  The Rule 11 proposed that Defendant plead to Counts I and III, receive a 3-point offense level reduction for acceptance of responsibility, and that his sentence would not exceed the mid-point of the Guidelines, plus an additional five years to run consecutively.  (Defendant did not attach the Worksheets referenced in the agreement which set forth the Government's estimation of the Guideline range).  The offer expired on March 7, 2003.

Defendant says this offer was never presented to him for consideration "because counsel ensured petitioner that the evidence against him was scant."  Def. Reply at p. 4. Although he claims innocence, Defendant says he would have accepted the plea rather than the 30-year sentence imposed.  The Government in its Response (via an AUSA

who did not participate in pretrial or trial proceedings), says "there is no indication that a plea was offered or would have been offered to Defendant given the crimes charged, his extensive criminal history, and the fact that he was on lifetime probation and supervised release during the date of the offenses." Gov't br. at p. 14. The Government did not file a Surreply to address the evidence Defendant provides which appears to contradict its claims.

Under §2255, a district court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law, unless the filings and record conclusively show the defendant is not entitled to relief. 28 U.S.C. §2255(b). Defendant presented a colorable claim of ineffective assistance of counsel which turns on disputed facts that cannot be resolved on the current record. "[A] defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance as a matter of law." *Guerrero v United States*, 383 F.3d 409, 416 (6th Cir. 2004). And, "a petitioner may establish the requisite prejudice by demonstrating a 'reasonable probability' that if he had been notified of the plea offer, he would have accepted it." *Id.* Contrary to the Government's denial that an offer was extended, Defendant presents a proposed Rule 11 agreement which appears to have been signed by two AUSA's, he denies his attorney conveyed the offer to him, and claims he would have accepted it. The Court will first require additional briefing from the parties on this issue before deciding whether an evidentiary hearing is necessary. Defendant is directed to file a supplement explaining how he came into possession of the Rule 11 Agreement he attached to his Reply, and the Government is directed to supplement its response to Defendant's claim.

### ii. Sentencing and Appeal Counsel

Defendant contends his sentencing and appellate counsel, Mr. Kalec, failed to argue that: 1) jurors found him guilty of a lesser offense; 2) application of the career offender Guidelines were advisory, not mandatory; 3) the Court improperly delegated its Article III duties; 4) attorney Tank had conflicts of interest and was ineffective; 5) the jury was improperly required to accept stipulations as proof of elements the Government was required to prove; and 6) "a colorable Confrontation Clause issue." Defendant's first five assertions fail for the reasons already stated. Defendant's final claim fails because he does not explain what the "colorable Confrontation Clause issue" is or cite authority in support.

## IV. CONCLUSION

Defendant's motion is **DENIED IN PART**. The Court requests that Defendant submit a supplemental brief as discussed above within 45 days of entry of this Order, and that the Government submit its supplemental brief within 14 days after Defendant's supplement is filed.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 27, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record and Mr. Thompson by electronic means or U.S. Mail on May 27, 2008.

s/Carol A. Pinegar
Deputy Clerk