UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

               Plaintiff(s),          **CASE NUMBER: 02-80631**
                                                        **HONORABLE VICTORIA A. ROBERTS**

**v.**

**VINCENT EARL THOMPSON,**

               Defendant(s).

_____/

**ORDER GRANTING DEFENDANT'S
28 U.S.C. §2255 MOTION**

## I.    INTRODUCTION

In March 2003, a jury found Mr. Thompson guilty on four counts: (1) possession of cocaine with intent to distribute, in violation of 21 U.S.C. §841(a)(1); (2) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §841(a)(1); (3) felon in possession, in violation of 18 U.S.C. §§922(g), 924(e)(1); and (4) possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C. §924(c). In May 2005, the Court sentenced Mr. Thompson to 360 months each on Counts I through III to be served concurrently, and 60 months on Count IV to be served consecutively to Counts I through III.

Mr. Thompson filed a 28 U.S.C. §2255 motion on October 23, 2007. (Doc. #113). He alleged his sentence should be set aside or vacated on 11 grounds.

The Court dismissed 10 of Mr. Thompson's claims on May 27, 2008, and required additional briefing on Mr. Thompson's claim that his trial counsel, Craig Tank,

1

was ineffective because he failed to convey a plea offer to him. (Doc. #130).

For the following reasons, Mr. Thompson's §2255 motion is **GRANTED**; the Court finds that Mr. Tank failed to communicate a plea offer to Mr. Thompson, and Mr. Thompson was prejudiced by Mr. Tank's deficiency.

**II. BACKGROUND**

**A. Chronology of Events**

Mr. Thompson retained Mr. Tank on February 10, 2003. Attorney visitation records show Mr. Tank visited Mr. Thompson in prison on February 21, 2003, March 2, 2003, and March 9, 2003. Trial began on March 25, 2003 and concluded on March 26, 2003. Records show that on February 25, 2003, AUSA Shawn K. Jacque signed a Rule 11 Plea Agreement which offered Mr. Thompson 188 to 235 months plus a mandatory five years to be served consecutively. The plea cut-off date was March 7, 2003.

Post trial, records show Mr. Tank visited Mr. Thompson on June 4, 2003 and June 6, 2003.

On September 1, 2003, Mr. Thompson had a telephone conversation with Mr. Tank that was recorded. Mr. Thompson complained that Mr. Tank "took [him] to trial," did not do anything at trial, and messed up his life because he faced 360 months to life. Mr. Thompson expressed surprise that his potential punishment was so severe. He told Mr. Tank his mother was upset when he told her he had to find out about his Presentence Report from the Prosecutor, and she was not too enthused about his potential punishment. Mr. Tank did not dispute that Mr. Thompson learned his potential punishment from the Government.

On October 23, 2003, Mr. Tank withdrew as counsel for Mr. Thompson. Another attorney represented Mr. Thompson for a period of time before Robert Kalec was appointed on March 17, 2004. Mr. Kalec represented Mr. Thompson at sentencing and on appeal. Mr. Thompson's conviction and sentence were affirmed by the Sixth Circuit on August 21, 2006. His petition for writ of certiorari was denied by the United States Supreme Court on March 19, 2007. This §2255 Petition followed.

Following receipt of additional briefing on Mr. Thompson's §2255 claim that Mr. Tank was ineffective because he failed to convey a plea offer to him, the Court held an evidentiary hearing on March 4, 2009 and April 15, 2009. Supplemental briefing was completed by May 19, 2009.

**B.     Evidentiary Hearing**

    **1.     Witnesses for Mr. Thompson**

        **a.     Mr. Thompson and Mr. Kalec**

Mr. Thompson testified that he did not learn about the Rule 11 Plea Agreement until he received his file from Mr. Tank in October 2003.

While Mr. Thompson proclaimed his innocence before, during, and immediately after trial, he now says he is guilty of the crimes charged, and would have accepted the Rule 11 Plea Agreement had he known of the offer before trial.

According to Mr. Thompson, he told Mr. Tank he did not want to spend the rest of his life in prison. In response, Mr. Thompson says Mr. Tank told him, he could beat the gun charges and get him three years on the drug charge. Mr. Thompson said he was willing to plead guilty if that would be the punishment.

Mr. Thompson admits to signing the Acknowledgment of the Superseding Indictment, which set forth the penalties he faced: (1) at least 10 years on count I (Possession of Cocaine with Intent to Distribute); (2) not more than 10 years on count II (Possession of Marijuana with Intent to Distribute); (3) at least 15 years on count III (Felon in Possession of a Firearm); and (4) a five-year consecutive sentence on count IV (Possession of a Firearm in Furtherance of a Drug Crime).

Mr. Thompson believes he spoke with Mr. Kalec and Kimberly Stout about the Rule 11 Plea Agreement. However, Ms. Stout stated in an Affidavit that she could not recall such a discussion.

Mr. Kalec testified that Mr. Thompson told him he was not offered a plea before trial. Mr. Kalec could not recall a discussion where Mr. Thompson told him that Mr. Tank did not communicate the Rule 11 Plea Agreement to him.

Also, Mr. Thompson did not mention the Rule 11 Plea Agreement in a letter he wrote to the Government in November 2007.

### b.    James Howarth

James Howarth met Mr. Tank in 2002 and shared office space with him from 2004 until 2006. Between December 2005 and February 2006, Mr. Howarth was on medical leave, and Mr. Tank became more active in Mr. Howarth's cases. Mr. Howarth testified that he had clients who complained that Mr. Tank abandoned them, failed to communicate offers, did not tell them about damaging materials that the Government provided, and lied to them. Mr. Howarth did not report Mr. Tank to the disciplinary board because he did not see any basis for the claims, and he believed the Grievance Agency was already involved.

Based on his experience with Mr. Tank and the length of time he has known Mr. Tank, Mr. Howarth testified that he would be very skeptical of believing that Mr. Tank conveyed a plea offer to a client if the client says it did not happen – even if Mr. Tank stated under oath that he conveyed such an offer to a client.

### 2. Witness for the Government (Craig Tank)

Mr. Tank testified that in 2003, he never made a note when a client rejected a plea offer. However, he said his practice was to convey all plea offers to his clients, and he recalled discussing the terms of the Rule 11 Plea Agreement with Mr. Thompson on a number of occasions before trial. He also said he discussed the Presentence Report, which would have contained the Guideline sentence of 360 months to life, with Mr. Thompson at the Macomb County Jail in the Summer of 2003. However, the Presentence Report is dated July 31, 2003, and the report from the United States Marshals Service Prisoner Tracking System shows Mr. Thompson was not in the Macomb County Jail between July 31, 2003 and September 1, 2003. Mr. Thompson would have had 10 days from July 31, 2003 to voice objections to the Presentence Report. No record shows that Mr. Tank visited Mr. Thompson after June 6, 2003.

Mr. Tank said Mr. Thompson rejected the Rule 11 Plea Agreement and decided to go to trial because the punishment in the Rule 11 Plea Agreement was so severe that Mr. Thompson did not believe he would survive the sentence (Mr. Thompson has diabetes).

Mr. Tank denies telling Mr. Thompson he could get him three years. According to Mr. Tank, Mr. Thompson said he was only willing to serve three years. In the September 1, 2003 telephone conversation, however, Mr. Thompson reminded Mr.

5

Tank that he told Mr. Thompson he would beat the gun charges. In response, Mr. Tank said that before trial, he told Mr. Thompson he thought they had a good chance of beating the gun charges, but there was no guarantee.

### III. APPLICABLE LAW AND ANALYSIS

To sustain an ineffective assistance of counsel claim, Mr. Thompson must prove Mr. Tank's performance was deficient and that he was prejudiced by the deficiency. *See Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"[A] defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance as a matter of law." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)). And, "a petitioner may establish the requisite prejudice by demonstrating a 'reasonable probability' that if he had been notified of the plea offer, he would have accepted it." *Id.*

If the Court finds Mr. Thompson had ineffective assistance of counsel, it must either discharge Mr. Thompson, re-sentence him, grant a new trial, or correct the sentence. *See* 28 U.S.C. §2255(b).

#### A. Failure to Communicate the Rule 11 Plea Agreement

The Court finds Mr. Tank's performance was deficient because he did not communicate the Rule 11 Plea Agreement to Mr. Thompson. This finding is based on: (1) Mr. Thompson and Mr. Howarth's testimony; (2) the fact that Mr. Tank only visited Mr. Thompson in prison one time between the date the Rule 11 Plea Agreement was

signed by the Government on February 25, 2003 and the plea cut-off date of March 7, 2003, despite Mr. Tank's testimony that he discussed the Rule 11 Plea Agreement with Mr. Thompson a number of times; and (3) the fact that Mr. Tank never mentioned the Rule 11 Plea Agreement during the September 1, 2003 telephone conversation when Mr. Thompson complained of the harsh sentence he faced and blamed Mr. Tank for it.

The first prong of Mr. Thompson's ineffective assistance of counsel claim is met. The Court now turns to the second prong.

### B.     Reasonable Probability that Mr. Thompson Would Have Accepted the Rule 11 Plea Agreement

The Government says there is no reasonable probability that Mr. Thompson would have pled guilty under the terms of the Rule 11 Plea Agreement. According to the Government, Mr. Thompson maintained his innocence, did not want to serve more than three years, and was focused on going to trial – not pleading guilty to a lengthy sentence.

The Court disagrees.

First, the Court need only find that there is a reasonable probability that Mr. Thompson would have accepted the Rule 11 Plea Agreement – not that he would have absolutely accepted it. Since he told Mr. Tank he did not want to spend the rest of his life in prison, it is probable he would have accepted a sentence ranging from 248 - 295 months.

Second:

> [i]t is well-established in this Circuit that a defendant's protestations of innocence do not constitute grounds for assuming that he or she would not have accepted the plea if properly advised. *See Smith v. United States*, 348 F.3d 545 (6th Cir. 2003); *Griffin v. United States*, 330 F.3d

> 733, 737 (6th Cir. 2003) ("Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence [beyond the disparity between the potential sentence and the plea offer], we in this circuit have declined to adopt such a requirement"); and *Magana v. Hofbauer*, 263 F.3d 542, 552-3 (6th Cir. 2001) (this holding applies "despite earlier protestations of innocence.").

*United States v. Nixon*, 318 F.Supp.2d 525, 527 (E.D. Mich. 2004).

Third, the substantial disparity between the penalty offered by the Government (188 - 235 months plus five years to be served consecutively) and the penalty called for by the Superseding Indictment (360 months to life) leads to the conclusion that there is a reasonable probability that Mr. Thompson would have accepted the Rule 11 Plea Agreement.

Finally, Mr. Thompson testified that Mr. Tank said he could beat the gun charges and get him three years on the drug charge. While Mr. Tank denied saying this, Mr. Tank admitted during the September 1, 2003 telephone conversation that he told Mr. Thompson before trial he thought they had a good chance of beating the gun charges. Mr. Tank's testimony is not credible, and it is reasonable to conclude that Mr. Thompson said he would serve three years because that is the sentence Mr. Tank said he could get.

**IV.   CONCLUSION**

The Court **GRANTS** Mr. Thompson's §2255 motion and **VACATES** the judgment entered on May 16, 2005. A Plea Hearing will be held on **September 9, 2009, at 10:30 AM**, so Mr. Thompson can plead to the reduced charges in the Rule 11 Plea Agreement.

Following the Plea Hearing, Mr. Thompson will be referred to Probation for an updated Presentence Report.

Mr. Thompson will be re-sentenced on **December 15, 2009, at 10:00 AM**. *See* 28 U.S.C. §2255(b):

> If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Re-sentencing is appropriate because Mr. Thompson now admits he is guilty, there is no reason for a new trial, and the sentence imposed was not based on a technical or arithmetical error.

At sentencing, the Court will take into consideration the sentencing factors under 18 U.S.C. §3553(a). Mr. Thompson may submit a sentencing memorandum by **November 16, 2009;** the Government may file a response by **November 30, 2009.**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 21, 2009

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 21, 2009.

s/Carol A. Pinegar
Deputy Clerk

---